And we'll hear argument next in the Universal Church v. Telner, 172960. Good morning, Your Honors, and may it please the Court, I'm David Donohue for Appellant Universal Church, Incorporated. The Universal Church is a Christian religious organization with hundreds of churches throughout the United States, tens of thousands of regular followers, and hundreds of thousands of weekly viewers of its programming. Appellees are also a religious organization who usually operate under Universal Life Church, but recently began acting as the Universal Church, including at a domain name, universalchurch.org, formerly owned by Appellant. The District Court erred in granting summary judgment to appellees in several ways. I'm going to focus on two errors today. First, the District Court's error in finding Universal Church marks to be generic, thereby stripping appellant of its federally registered trademarks. And second, by the District Court's error in granting summary judgment to appellees, despite the fact that you have two religious organizations using the same mark for related religious services. Beginning with genericness, the test for genericness is set forth in our briefs is, what is the primary significance of the market issue? Does it identify the product or the producers? This is a fact question, ill-suited for summary judgment, and because the United States Patent and Trademark Office granted trademark registrations to appellant, the burden is on appellees to come forward with evidence of genericness and also to... And they did that with an expert, at the very least, plus the dictionary. Well, Your Honor, I'll take those in turn. The expert testimony focused on the understanding within the hierarchy of the Catholic Church, of Universal Church, or references throughout time within the hierarchy of the Catholic Church. Universal Church does not appear in the Bible. It doesn't appear in the weekly liturgy of Catholic parishioners. It doesn't appear in hymns. It doesn't appear in homilies. This is a reference by theologians and... Going back to St. Augustine, at least. Yes, Your Honor, but again, there's no evidence that ordinary consumers of religious services consider Universal Church to be a type of church. These references were references to a concept of all Christians or referring to all Catholics. If you look at it through the prism of summary judgment, which is the prism that we have before us, you would agree that your adversary at least put in evidence by way of expert testimony that the Universal Church has been a term used by millions of Christians slash Catholics. Would you agree with that? No, Your Honor, not that. They did not put in evidence that it's been used by millions of Christians and Catholics. They put in evidence that it's been used by theologians within the Catholic Church. Is it your contention that that was not enough or is it your contention that you put in factual evidence that contradicted it? Both, Your Honor. It's not enough. Okay. Why isn't that enough? It's not enough because it's not enough just to say that a term has some historical significance or a definition. Otherwise, no descriptive marks would be registrable. They'd all be generic. The proof has to be that the term is, first of all, generic to ordinary consumers, but also generic for the goods and services at issue. It's not simply enough to say, well, this has some religious significance. The Sixth, Seventh, and Eighth Circuits have recognized that in cases we cited in our brief General Conference Corp of the Seventh-day Adventists, Teteh-Ma-Chuth Foundation, and a community of Christ Copyright Corporation. It's very common for religious organizations to use religious terminology in their trademarks. What the expert report said was it referred to the longstanding common use of the phrase universal church in various contexts demonstrates without question that the phrase has been in generic usage over two millennia to describe the church as a whole throughout the world. Why isn't that enough evidence, at least, to put it on you to generate some factual dispute? Well, the expert also admitted that he had no understanding of whether ordinary Catholics, let alone the public in general, non-Catholic consumers of religious services, had an understanding of universal church. He did say that in his report, but that statement does not stand up under scrutiny when you look at the limitations of his report that he admitted. As to descriptive trademarks in general, they always have at least two meanings. There's an initial meaning, the term and its descriptive use, and then there's also secondary meaning. Here, the United States patent and trademark found that universal church has secondary meaning among consumers. In other words, it identifies a producer, not the product. That finding of secondary meaning, at least as to one of the two registrations at issue here, cannot be challenged because the trademark is incontestable. It's not much different than American Airlines. American Airlines clearly can be used in a descriptive sense to describe all airlines owned by Americans or that exist in America, but there's secondary meaning that's attached to the term, and so when used as a brand, it identifies a specific brand of airlines. It's no different here with respect to universal church. The district- Can you go on to the Polaroid factors and why the district court erred, you think, in its consideration of Polaroid factors? Yes, Your Honor. Here you have evidence of bad faith in terms of the timing of Applee's registration of various universal church formative domain names coming immediately after they were denied a registration for their trademark, Universal Life Church. So immediately after that, they went on this buying spree. They identified themselves as the universal church. There's an image in our brief, a screen capture, showing their reference to themselves as the universal church. Is the evidence of actual consumer confusion? There is testimony from a few witnesses on, and I can provide record sites, but a few witnesses from appellant of examples of actual confusion. They testified that they were told by parishioners and others within the church that they had trouble locating appellant's website and were confused. Weren't the constituents different? In one case, those who wish to be ordained, and the other just normal parishioners? Well, Your Honor, Applee's director testified that Applee is definitely a church and definitely a religion. And we in the district court were required to take them at their word on that. Yes, they do offer online ordination services, but at the website universalchurch.org, at least during a portion of the time that provides the basis for the likelihood of confusion claims here, they were not advertising ordination. They were just providing information about the universal church and saying that we're all connected spiritually, referring to their ministers as universal church ministers. But in terms of competitive proximity, what exactly is your line of business? Appellant's line of business is operating church, conducting religious services. Obviously, they ordain ministers as part of those services, but they also provide counseling services, religious counseling services, drug addiction counseling services, and the like. Everything you would expect of a church in the modern day. Appellee's, in turn, yes, offer online ordination services, but they also provide religious information and purport to cater to people looking for spiritual guidance. So there is overlap, Your Honor. Also, in terms of the, both in the likelihood of confusion analysis, as well as the district court's finding on genericness, the district court erred blatantly in relying on bare corporate listings of listings of businesses incorporated under universal church, this court's decision in favor of corporate listings, I've reserved time for rebuttal. Thank you. Thank you. Mr. Barrett. Good morning, Your Honors. May it please the court, my name is Stephen Barrett of counsel to the law firm of Wilson-Elser for the appellees. Your Honor, it's implicit in the appellant's argument on genericness. Is the semantic notion that universal, when used in conjunction with a church, is per se descriptive and not generic because it is an adjective and not a noun. But courts in this circuit, the Seventh Circuit, and the Ninth Circuit have held that generic terms need not only be nouns that directly name a product, but may also be adjectives that designate a distinctive characteristic of a genus of products. And that rationale is rooted in this court's holding in CES Publishing versus St. Regis Publications, which stands for the proposition that competitors need to be equally able to accurately describe the goods that they sell, or the products or services that they offer. Now this is a little bit of an idiosyncratic case, because we're talking about religions, but the genus of product here clearly is a church. And being universal is a characteristic that any church should be able to adopt. And so the appellant can't take out of the public domain the notion of universality as it applies to a church. Specifically, in the Christian context, the phrase universal church has a very specific historical resonance. Mr. Donahue is making the point in answer to my questions that that may be true, what you say, but the expert on which you relied didn't actually tie the theological history to what people who seek and provide religious worship services today would think of as a universal church. So I think his point is, there's no showing, no evidence that the relevant public views it as the universal church, views the universal church designation as something other than what it is. Three points on that, your honor. The first being, the appellant's categorization of appellee's expert's testimony is simply inaccurate. He very clearly testified that at minimum, Catholics understand universal church to refer to the entire body of those people who have been baptized as followers of Jesus Christ, whether they be Catholics or not. And he testified that that is a common Catholic understanding. And the appellant's expert ratified that understanding that Catholics at least understand the term in that way. And not insignificantly, Catholics account for approximately 23% of the US population. But in addition to that, appellant's own expert also testified that other denominations have an understanding of universal church in a generic sense. Now the appellant's expert put a slightly different theological bent on it. What he essentially testified was, is that there are certain evangelical Christian groups that view the universal church as meaning all followers of Christ, which will be known upon entering the kingdom of heaven. Meaning we can't identify who those people are until the afterlife. But without going too deeply into the theology, for our secular legal purposes, that is additional evidence that there is an understanding beyond Catholicism of universal church having a generic meaning for the interconnectedness at minimum of all followers of Christ. And appellant's expert conceded that that understanding, at least of some kind of interconnectedness between all Christians, goes back to at least 380 AD in the writings of St. Augustine. In addition to that, the appellants in the court below conceded, and this is on page 2049 of the record, that the Apostle Paul used the phrase universal church to describe, quote, the whole body of believers in Christ. So the second point, that was a bit long winded on the first point, but the second point that I want to make with respect to the appellant's argument that the appellees haven't shown common usage, what's really at stake in the appellant's argument is what type of evidence is necessary to show public perception of the term. And what the appellant's position basically is, is that you've got to go out on the corner and do man on the street interviews to figure out how people today understand the term. But that's simply not true. And there's a Fourth Circuit case, Huntmasters versus Landry Seafood, that really puts the clearest, the finest point on why that's inaccurate. In that case, the court was discussing the generic term crab house. And in that case, the defendant offered no consumer survey supporting a finding of genericism. And in fact, the plaintiff put in a consumer survey indicating strength of brand in the local marketplace. But what the Fourth Circuit said was, is quote, the notion that whether a word is generic depends upon consumer's understanding of the word is based upon a scenario involving a coined word for a commercial product that is alleged to have become generic through common usage. But in that case, because the plaintiff hadn't invented the word crab house, but rather they had plucked it out of the public domain, a consumer survey wasn't necessary. What you can look to is you can look back to the public domain to understand what the meaning of the term was. And now while that's a Fourth Circuit case, this court in Harley Davidson versus Grottolini has applied basically the same line of reasoning, though not stating it as explicitly. In that case, the court found that hog, H-O-G, is generic for motorcycles and told Harley Davidson that they could not claim ownership over the term hog for motorcycles. And all they looked to in that case was dictionary definitions and magazines and newspaper accounts. Here, in addition to dictionary definitions, there are no magazine and newspaper accounts. But instead what there are are thousands of years of texts across varying religions using this term in a generic sense to capture the broader notion of a larger church beyond a small insular parish of churches. And if I can very briefly turn to likelihood of confusion as I see my time is starting to run low. What appellant seemingly is pointing to principally on likelihood of confusion is the concept of bad faith. And they say, they've begun only now, meaning the appellees have begun only now referring to themselves as the universal church with a bad faith intent to divert congregants, I suppose. It's simply inaccurate. The testimony in the record is quite clear that the appellee's spiritual predecessor was a church in the 1950s that called itself the universal church. Somewhat ironic. If I opened up a shop and called it the Catholic Church, would that be a generic term? Yes, your honor. I believe that the appellee's expert actually testified to that because he said that due to the fact that Catholic being derived from the Greek, meaning universal, has so now, through the splintering of Protestant denominations, has become so known as the Roman Catholic Church to differentiate. And in fact, that's actually an issue here as well, is that really the appellant's church isn't the universal church. It's the universal church of the kingdom of God. And the reality is that they have a trademark registration for that larger phrase. That is not an issue here. That is not an issue here, but their trademark registration for that other trademark is in the record at page 59. So it's not as if finding the narrower phrase universal church is going to somehow divest the appellant of being able to self-identify. They just have to identify themselves by their full name, Universal Church of the Kingdom of God. Why did you use the mark if you knew it was protected after applying for trademark protection yourself? That goes back to what I was discussing with respect to the prior usage of the phrase the universal church by the spiritual predecessor in the 1950s. The appellee came to believe that there were people who were searching for that predecessor group. In fact, the president of the current Universal Life Church was actually originally ordained in that predecessor group, the Universal Life Church. And so in an effort to ensure that they captured misnomer traffic of people who were looking for that predecessor entity, they began using the phrase the universal church, but only with a proper trademark disclaimer, identifying that they were not the same as the appellant. I see that my time is up, so if the bench has no further questions, I will rest on our brief. Thank you very much, Your Honors. Mr. Donahue. Thank you, Your Honors. I'd like to start with just by addressing a couple of misstatements by my opponent here. Paul never used the phrase universal church. Universal church does not appear anywhere in the Bible, and there's nothing in the record that says that Paul used universal church. There's a reference to another resource talking about Paul's use of church. When Paul refers to church in a couple of letters in the Bible, that Paul must have been referring to the broader church, the universal church. But Paul himself never said it, and it's not in the Bible. Also, on the last thing that Mr. Barrett was saying about the spiritual predecessor, once being known as universal church, that was in the 1950s, if at all. There's no testimony or evidence in the record at all that that's why Apolles started using universal church in 2010. That's purely an invention of counsel. It's creative, but it doesn't substitute for evidence. Going back to what Judge Loewe was asking about before, the test is the understanding today. Actually, the understanding as of 2009 or 2010 when Apolles started using universal church. The test is what ordinary consumers understand universal church to be. Not what theologians understand today and not what theologians understood 1,000 years ago. This is much different than Harley-Davidson versus Grottinelli. In that case, there were the immediate decades prior to Harley-Davidson claim of trademark rights. There was rampant evidence of use by motorcycle enthusiasts to refer to the very product at issue, motorcycles, large motorcycles as hogs. And Harley-Davidson itself admitted that it was aware of that usage and tried to dissociate itself from the term hog. So that's a far cry from what we have here.  Maybe not in his expert report, it's not that clear. That he is testifying about what he believes are the views of most Roman Catholics and maybe extending beyond that, people who are not Christians, who are not Roman Catholics. In his deposition, he admitted that he had not researched what ordinary Catholics perceive and what they know. He was, in a sense, he appeared to be guessing. And that's throughout his testimony when asked, would ordinary Catholics see this? His answer was no. And in any event, again, they're referring to this- Where does he say that? I can try to find it for your honor. And I'll give you a little time, because I don't know if you can see it. Yeah, in the Joint Appendix 660 at 54, 3 to 12. Again, at page 66, I can pull out the questions and answers and read them. But he's asked whether various texts are the type of texts that he answers no each time. He also says- Well, no, but he's asked, do you have any specialized knowledge of the meaning of the phrase universal church to Pentecostal Christians? No. Right, and that in particular is- To your customers, no, but that's not the relevant public. Yeah, but it's not the relevant public that you agree to before Judge Buchwald. Well, the relevant public would be all potential consumers of religious services. But also at page 66, at 78, 13 to 20, he's asked, have you done any research to determine, I'm sorry, hold on a second. I'm sorry, what page are you on? I'm on, there were various sites that we strung together. And this is 667, 668, and 669 is the area of questioning. But those are the areas that you point to? Yes, yes, your honor. Just see if I can find the specific reference that Judge Loewe asked about. Let's see. I'm sorry, your honor, if I had more time I could find them, but- I didn't recall that, but go ahead. Yes, your honor, do you want me to keep looking or- No, no. Yeah. I'll give you a minute more since I took- Yeah, I'm sorry. Okay. In terms of the test applied by the Fourth Circuit in the Huntmasters case, again, that case is not consistent with the Supreme Court. The Supreme Court in the Shredded Wheat case identified the principle significant test among ordinary consumers to be the test for genericness. This court in the Genesee Brewing case has said that test is the law of the land. It's codified in the Lanham Act. There's no separate test for coin terms versus terms that exist in history. A term that exists in history, as I said before, must be judged in relation to the current consumers as well as the services that are at issue. It's not enough to say universal church has been used by some people to refer to all Christians when the genus here is not all Christians. The genus here is a religious organization offering religious services. It's not enough to say that it has a historic significance. Thank you very much. Thank you, Your Honor.